In the Matter of ELMER G. ST. JOHN, Petitioner, against HAROLD G. KOACH, as Administrator of the Binghamton City Hospital, et al., Respondents.— Proceeding under article 78 of the Civil Practice Act to review a determination of the administrator of the Binghamton City Hospital which sustained certain charges against petitioner and suspended petitioner for two months without pay from his position as radiologist. The determination was made after lengthy hearings, and the matter was transeferred to this court by order of the Supreme Court. Petitioner was radiologist and served as head of that department by virtue of a permanent appointment in the competitive class of the classified civil service. One Doctor Drucker served by similar permanent appointment as assistant radiologist during the times involved here. On May 25, 1959, both petitioner and Dr. Drucker were served with a statement of charges preferred against them by the administrator of the hospital. The charges against petitioner contained 14 specifications, and following the hearings 9 of the charges were sustained and 5 were found not to be sustained by the evidence. We deem it unnecessary to recite the charges in detail, but in general, the charges which were sustained accused petitioner of negligently failing to discover an overdosage of radiation had been given a patient; making erroneous computations and entries; failing to report and concealing matters from his superiors, and, in concert with Dr. Drucker, participating in the destruction of certain records and substituting other records therefor in the hospital files. A patient was given post-operative deep X-ray therapy upon the request of her physician. The practice was for

either petitioner or Dr. Drucker to adjust the equipment to the proper area and distance and then a technician set the controls and automatic timer and administered the radiation treatment. It is undisputed that the patient on 6 occasions was given an overdose of radiation by continuing the treatment for 8 minutes when the correct time should have been 1.8 minutes. The patient subsequently suffered from radiation burns which caused her death. The actual time of 8 minutes was correctly listed in the original record by the technician in a column provided therefor on the original daily record of treatment. In another column on the same line the technician erroneously entered "200 roentgens" when with 8 minutes of time instead of 1.8 it should have been 1,000 roentgens. Either petitioner or Dr. Drucker would compute the total dosage and enter it in their own handwriting on the same line as the entries made by the technician. Petitioners made incorrect entries of daily dosage because he did not look at the length of time entered upon the same record sheet, but computed it only by using the erroneous entry of roentgens. Immediately upon her return from vacation the head technician discovered the error by looking at the same daily record upon which petitioner had made notations. It is undisputed that the original daily record was destroyed by the technician upon orders. The assistant technician who had made the entries was directed to prepare a substituted record. Each person who had made any entry on the original record, including petitioner, made a notation in his or her own handwriting upon the substituted record, which falsely listed the time of treatment as 1.8 minutes in each instance where the original record listed 8 minutes. The false substituted record remained in the patient's file from October, 1958 to February, 1959. Nothing was said by anyone, including petitioner, to the administrator of the hospital or to any superior about the overdosage or about the substitution of a false record for approximately four months, and then only when an attorney made inquiry concerning the patient's injuries. While the evidence does not disclose that petitioner personally destroyed any record or falsified any substitute record, it clearly establishes that he participated in the events leading to the substitution of a false record to an extent which gave him full knowledge of what others were doing and of what was going on, and if he did not expressly approve of it, his mere silence and inaction in the face of that knowledge signifies approval. While it may not have been the duty of petitioner to personally institute any disciplinary action against his subordinates, it was clearly his duty, even in the absence of any rule or direction, to report an incident of such serious consequences to his superiors promptly. There is substantial evidence in the record to support the charges found to be sustained by the respondent. The record discloses that the petitioner had a full and fair trial, and none of the errors urged by petitioner warrant the interference of this court with the determination or the degree of discipline imposed. Determination unanimously confirmed, without costs. Present — Bergan, P. J., Coon, Gibson, Herlihy and Reynolds, JJ.